UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

COLEEN ESLINGER, as Personal
Representative of the Estate
of Alyse Danielle Rolnick,

           Plaintiff,

v.                                                                    Case No. 5:20-cv-11-BJD-PRL

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.

           Defendants.

_____

## ORDER

### I. Status

Plaintiff is proceeding on a second amended complaint filed by counsel (Doc. 47; Am. Compl.). As personal representative of the estate of Alyse Danielle Rolnick, a former inmate of the Florida Department of Corrections (FDOC), Plaintiff sues Defendants for damages under federal and state law for Ms. Rolnick's death. Plaintiff proceeds against the following Defendants: the FDOC; Kim Chris Southerland in her capacity as warden of Florida Women's Reception Center (FWRC); Hope E. Gartman in her capacity as warden of Lowell Correctional Institution (LCI); Centurion of Florida, the company under contract with the FDOC at the relevant times to provide medical care for

inmates; Carlos M. Gonzalez Pagan, M.D.; and Jose Rodriguez, M.D. <u>See</u> Am. Compl. ¶ 7.

Defendants FDOC, Gartman, and Southerland move to dismiss the claims against them under Rule 12(b)(6), Federal Rules of Civil Procedure (Docs. 50, 51, 53). Plaintiff has responded to the motions to dismiss (Docs. 55-57). Defendants Centurion, Gonzalez Pagan, and Rodriguez (the medical Defendants) have answered the complaint (Doc. 54).

Also before the Court is Plaintiff's motion for out-of-time disclosure of her expert (Doc. 63; Disc. Motion), which the medical Defendants oppose (Doc. 64; Disc. Motion Resp.).

## II. Motion to Dismiss Standard

A party may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." <u>See</u> Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, but the Court need not accept as true legal conclusions. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, a plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007). Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

Iqbal, 565 U.S. at 678. The purpose of the federal pleading rules is to ensure a plaintiff presents her "claims discretely and succinctly, so that[ ] h[er] adversary can discern what [s]he is claiming and frame a responsive pleading." Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting Weiland v. Palm Bch. Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015) (first alteration in original)).

### III. Complaint Allegations

Ms. Rolnick was an inmate in the custody of the FDOC beginning on about April 27, 2017, through her death in early January 2018. See Am. Compl. ¶¶ 40, 97, 99. Ms. Rolnick was first housed at FWRC and was transferred to LCI on October 16, 2017. Id. ¶ 40. When she entered the FDOC, Ms. Rolnick had a rare condition called Pulmonary Arterial Hypertension (PAH). Id. ¶ 45. Plaintiff describes PAH as "a chronic disease that causes the walls of the arteries of the lungs to tighten and stiffen …. [which] causes stress to the right side of the heart …. compromising the heart's ability to push blood out of the heart, through the lungs and into the rest of the body." Id.

Plaintiff alleges Defendants knew of Ms. Rolnick's serious medical condition and knew she needed to receive "inspired oxygen" 24 hours a day. Id. ¶¶ 46-47. Despite this knowledge, however, Defendants "never provided [Ms. Rolnick] the appropriate medication or oxygen required to treat her." Id. ¶ 48.

According to Plaintiff, when Ms. Rolnick was housed at FWRC, urgent medical appointments were delayed or canceled, id. ¶¶ 51-58, 60, and Ms. Rolnick submitted "several" inquiries about the status of her care and to request treatment, which were not immediately answered or that did not address her needs, id. ¶¶ 62-67. After Ms. Rolnick was transferred to LCI on October 16, 2017, she still did not receive oxygen or the medication she required to properly treat her condition. Id. ¶¶ 68-69.

Plaintiff alleges she sent emails and called Defendants Gartman, Southerland, and other FDOC and Centurion representatives "advising them of [Ms.] Rolnick's serious medical needs and pleading with them to address" those needs. Id. ¶¶ 73-74. Plaintiff chronicles the communications she made or attempted to make between May 1, 2017, and August 28, 2017. Id. ¶¶ 76-95. Plaintiff alleges she specifically informed Defendant Southerland, the warden of FWRC, that Ms. Rolnick could not be in the heat or humidity or walk long distances and required a particular kind of medication, which the FWRC doctor refused to prescribe. Id. ¶¶ 91, 93, 94. Plaintiff's "repeated attempts" to obtain appropriate medical attention for Ms. Rolnick went ignored. Id. ¶ 75.

Just days before her death at LCI, Ms. Rolnick submitted an inmate request form "pleading to see a doctor because of her inability to breathe." Id. ¶ 97. Two days later, the responding official, who is not a Defendant in this

action, told Ms. Rolnick to submit a sick-call request.[1] <u>Id.</u> Three days after that, Ms. Rolnick was found unresponsive in her cell. <u>Id.</u> ¶ 99. Unnamed Defendants refused immediate entry to first responders, instructing them first to move the ambulance and then sending them to the wrong location within the prison. <u>Id.</u> ¶¶ 99-100. When first responders eventually made it to Ms. Rolnick, they could not revive her, and she was pronounced dead. <u>Id.</u> ¶ 101. The cause of her death was pulmonary hypertension. <u>Id.</u>

In separate counts, Plaintiff asserts claims under 42 U.S.C. § 1983 against Defendants Southerland, Gartman, Gonzalez Pagan, Rodriguez, Centurion, and the FDOC for their deliberate indifference to Ms. Rolnick's serious medical needs. <u>Id.</u> ¶¶ 104-05, 109, 114, 119, 124, 129, 138-41, 154-55, 157, 165-80, 181-96. Plaintiff also asserts state tort claims against the FDOC and the medical Defendants. <u>Id.</u> ¶¶ 202-04, 209-11, 215-17, 221-23.

## IV. The Motions to Dismiss

The following motions to dismiss are before the Court: the FDOC's (Doc. 50; FDOC Motion); Defendant Gartman's (Doc. 51; Gartman Motion); and Defendant Southerland's (Doc. 53; Southerland Motion). In each motion, Defendants assert, among other things, that Plaintiff fails to state a plausible

---

[1] With her complaint, Plaintiff filed a copy of the inmate request and response (Doc. 47-1).

deliberate indifference claim under § 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "a person" acting under the color of state law deprived her of a right secured under the United States Constitution or federal law. <u>See</u> 42 U.S.C. § 1983. A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To state a claim, a plaintiff first must allege she had a serious medical need. <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004). Next, the plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010) (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence").

"Where a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." <u>Hamm v. DeKalb Cnty.</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) (quoting with alteration <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (1st Cir. 1981)). As such, allegations of medical negligence are not cognizable under § 1983. <u>Estelle</u>, 429 U.S. at 106.

However, a prisoner who receives some medical care may state a plausible claim for deliberate indifference if she alleges the care she received was "so cursory as to amount to no treatment at all," was grossly inadequate, or was guided by a "decision to take an easier but less efficacious course of treatment." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). See also Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Medical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'").

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." McElligott, 182 F.3d at 1257. Accordingly, the Eleventh Circuit has "repeatedly found that 'an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.'" Id. at 1255.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d

1352, 1360 (11th Cir. 2003) ("The standard by which a supervisor is held liable in [his or her] individual capacity for the actions of a subordinate is extremely rigorous."), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).  A supervisor may be liable under § 1983 only when he or she "personally participates in the alleged constitutional violation or when there is a causal connection between [his or her] actions … and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotation marks and citation omitted).

> The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Alternatively, the causal connection may be established when a supervisor's "custom or policy … result[s] in deliberate indifference to constitutional rights" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

Cottone, 326 F.3d at 1360 (internal citations omitted).

When a claim against a supervisor is premised on a supervisor's knowledge of prior constitutional deprivations, the plaintiff must show those prior deprivations were "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). A supervisor's failure to train employees may constitute an

unconstitutional policy or custom, but a plaintiff must allege "the failure to train amounts to deliberate indifference" to an inmate's health or safety. <u>See</u> <u>Keith v. DeKalb Cnty., Georgia</u>, 749 F.3d 1034, 1053 (11th Cir. 2014). Under a failure-to-train theory, a plaintiff ordinarily must establish the alleged training deficiency resulted in "[a] pattern of similar constitutional violations." <u>Id.</u> (alteration in original) (quoting <u>Connick v. Thompson</u>, 563 U.S. 51, 62 (2011)).

## A. The FDOC's Motion

Plaintiff names the FDOC in four counts: count six (deliberate indifference under § 1983); count ten (supervisory liability under § 1983); count eleven (medical negligence under state law); and count fifteen (general negligence under state law). The FDOC argues Plaintiff fails to state a claim for relief under § 1983 because she alleges no facts showing the FDOC was deliberately indifferent to Ms. Rolnick's medical needs or adopted a policy or custom that was the driving force behind a constitutional violation; Plaintiff fails to state a plausible claim for medical negligence because the FDOC is not a medical provider; Plaintiff fails to state a claim for negligence because she does not allege the FDOC owed a duty to Ms. Rolnick; and the complaint is a "shotgun pleading." <u>See</u> FDOC Motion at 3-5. In response (Doc. 55; Pl. FDOC Resp.), Plaintiff contends she adequately pleads claims under § 1983, and the

FDOC can be held vicariously liable for the negligent acts of its employees or agents. See Pl. FDOC Resp. at 5, 8-9, 11, 14.

Whether Plaintiff's factual allegations are substantively sufficient to state a plausible deliberate indifference claim against the FDOC, the claims arising under § 1983 fail for a more fundamental reason: A state agency such as the FDOC is not a person amenable to suit under § 1983. See Gardner v. Riska, 444 F. App'x 353, 355 (11th Cir. 2011) ("A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable." (quoting Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir. 1995))). As such, Plaintiff's § 1983 claims against the FDOC (counts six and ten) are subject to dismissal.

Whether the state-law claims may proceed is less clear given the parties' briefing. The FDOC asserts it cannot be liable for medical malpractice (count eleven) because it is not a healthcare provider, or for general negligence (count fifteen) because Plaintiff "fails to allege that [it] owed a duty" to Ms. Rolnick related to the provision of medical care. See FDOC Motion at 4, 5. In response, Plaintiff clarifies its state claims are based on a theory of vicarious liability. See Pl. Resp. at 11-12, 14; see also Am. Compl. ¶¶ 198-203. The Florida sovereign immunity statute provides as follows, in pertinent part:

> The exclusive remedy for injury or damage suffered as
> a result of an act, event, or omission of an officer,

employee, or agent of the state or any of its
subdivisions or constitutional officers shall be by
action against the governmental entity, or the head of
such entity in her or his official capacity, or the
constitutional officer of which the officer, employee, or
agent is an employee, unless such act or omission was
committed in bad faith or with malicious purpose or in
a manner exhibiting wanton and willful disregard of
human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). As a state agency, the FDOC can be sued in state court

for the negligent acts of its employees or agents. Id.

However, because Plaintiff seeks solely compensatory damages from the

FDOC, the state claims may not be cognizable in this Court given the State's

entitlement to Eleventh Amendment immunity. See Fla. Stat. § 768.28(18)

("No provision of this section, or of any other section of the Florida Statutes …

shall be construed to waive the immunity of the state or any of its agencies

from suit in federal court, as such immunity is guaranteed by the Eleventh

Amendment."). See also Schopler v. Bliss, 903 F.2d 1373, 1378-79 (11th Cir.

1990) ("This court has held that section 768.28 does not waive Florida's

Eleventh Amendment immunity."); Powell v. Fla. Dep't of Corr., No. 4:17-CV-

453-WS-GRJ, 2018 WL 2033711, at *3 (N.D. Fla. Mar. 28, 2018), report and

recommendation adopted, No. 4:17CV453-WS/GRJ, 2018 WL 2024624 (N.D.

Fla. May 1, 2018) ("Florida's consent to be sued for tort claims in state court

in [section] 768.28, Florida Statutes, does not allow tort claims against Florida

in federal court."). On summary judgment, the parties should address this threshold issue. At this juncture, though, the state claims will proceed.

## B. Defendant Gartman's Motion

Defendant Gartman argues Plaintiff's deliberate indifference claims fail because Plaintiff makes "all[-]encompassing assertions" about Defendants jointly and Plaintiff's allegations directed to her are merely a "formulaic recitation of the elements of a cause of action." See Gartman Motion at 3, 5-6.[2]

Plaintiff alleges enough facts that, accepted as true, demonstrate Ms. Rolnick had a serious medical need when she was housed at FWRC and LCI. However, Plaintiff directs absolutely no factual allegations to Defendant Gartman that would permit the reasonable inference Defendant Gartman knew of Ms. Rolnick's serious medical needs and, with that knowledge, was deliberately indifferent.

Plaintiff refers to Defendant Gartman only in two paragraphs in which she sets forth the general factual allegations that support her claims:

> Coleen Eslinger, on behalf of Alyse Rolnick sent
> emails to Gartman, Southerland, and other FDOC and

---

[2] Defendant Gartman also invokes sovereign immunity under Florida law but confusingly combines the sovereign-immunity and qualified-immunity standards. See Gartman Motion at 7-8. Regardless, Plaintiff clarifies in her response (Doc. 56; Pl. Gartman Resp.) that she does not assert state tort claims against Defendant Gartman. See Pl. Gartman Resp. at 13.

> Centurion representatives, employees, and agents advising them of Rolnick's serious medical needs and pleading with them to address Rolnick's serious medical needs.
>
> Furthermore, Coleen Eslinger, on behalf of Alyse Rolnick made telephone calls and left messages in attempts to speak to Gartman, Southerland, and other FDOC and Centurion representatives, employees, and agents to advise them of Rolnick's serious medical needs and pleading with them to address Rolnick's serious medical needs.

Am. Compl. ¶¶ 73-74 (full capitalization of names omitted). In the paragraphs that follow, Plaintiff chronicles the steps she took to notify officials of Ms. Rolnick's medical condition and treatment needs. She alleges that between May 1, 2017, and August 28, 2017, she sent multiple emails and made phone calls to various prison and FDOC officials. Id. ¶¶ 76-95. During these months, Ms. Rolnick was housed at FWCR, where Defendant Southerland was the warden, not at LCI, where Defendant Gartman was the warden. Ms. Rolnick was transferred to LCI on October 16, 2017. Id. ¶ 40. Plaintiff does not allege having had any conversation, by phone or email, with Defendant Gartman or anyone at LCI between October 16, 2017, and the date Ms. Rolnick died. In fact, the last communication Plaintiff alleges having had with anyone about Ms. Rolnick's condition and her deficient medical treatment was on August 28, 2017, months before Ms. Rolnick was transferred to LCI. Id. ¶ 95.

Even if Defendant Gartman, as the warden of LCI, could have seen Ms.

Rolnick's "medical chart from the Broward County Jail," id. ¶ 47, Plaintiff alleges no facts demonstrating Defendant Gartman knew of Ms. Rolnick's condition and also knew that her treatment needs were not being met. Defendant Gartman is not a medical provider and cannot be held liable under § 1983 for failing to protect Ms. Rolnick from a risk of harm of which she was unaware. See Farmer v. Brennan, 511 U.S. 825, 838 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

Additionally, it is not enough for Plaintiff to allege facts showing that Defendant Southerland, warden of a different institution, knew of Ms. Rolnick's medical condition and treatment needs because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." See Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008). Upon review, Plaintiff's assertions that she sent emails and attempted to "speak to [Warden] Gartman" are mere conclusions unsupported by facts. These bare allegations are insufficient to permit the reasonable inference Defendant Gartman knew of Ms. Rolnick's serious medical needs and knew those needs were not being met. "[A] plaintiff may use legal conclusions to structure [her] complaint, but legal conclusions 'must

be supported by factual allegations.'" McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting Iqbal, 556 U.S. at 679). Accordingly, count two must be dismissed.

Plaintiff's supervisory liability claim against Defendant Gartman (count eight) also is founded on mere conclusions amounting to a "formulaic recitation of the elements of a cause of action." See Twombly, 550 U.S. at 555. For instance, Plaintiff alleges Defendant Gartman "authoriz[ed]" employees to violate Ms. Rolnick's constitutional rights, implemented or sanctioned "de facto policies, practices, and/or customs" regarding the provision of medical care to inmates at LCI, knew of a inadequacy in the provision of medical care to inmates, and failed to properly train or supervise personnel. See Am. Compl. ¶¶ 151-55. Plaintiff also alleges LCI "has a long history, documented in reports and medical audits, of alarming and life-threatening deficiencies" in the provision of medical care. Id. ¶ 43.

Plaintiff offers no facts supporting these broad-sweeping conclusions. As such, she fails to satisfy federal pleading standards. See Barmapov, 986 F.3d at 1326 (holding the plaintiff's conclusory and vague allegations prevented defendants from understanding "the grounds upon which each claim [against them] rests"). See also McCullough, 907 F.3d at 1334 ("As the Supreme Court has explained, allegations that government officials were the 'principal

architect' and 'instrument[ ]' behind an unlawful policy, without supporting allegations, are conclusory.").

For the reasons stated, the claims against Defendant Gartman (counts two and eight) are due to be dismissed, but Plaintiff will be given an opportunity to amend, per her request. <u>See</u> Pl. Gartman Resp. at 14.

## C. Defendant Southerland's Motion

Defendant Southerland argues Plaintiff fails to state a deliberate indifference claim against her because she was not a healthcare provider. <u>See</u> Southerland Motion at 5-6.[3]

Deliberate indifference to a prisoner's serious medical needs can be manifested by prison staff other than healthcare providers. <u>See, e.g.</u>, <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1327-28 (11th Cir. 2007) (holding the inmate-plaintiff demonstrated a genuine issue of material fact whether an officer was deliberately indifferent to her likely miscarriage even though the inmate had been treated by medical staff where the officer disregarded the inmate's complaints to him that "the medical staff … had not attended to her needs"); <u>see also</u> <u>Johnson</u>, 387 F.3d at 1351 ("A prisoner states a valid claim, under 42

---

[3] Like Defendant Gartman, Defendant Southerland invokes sovereign immunity. <u>See</u> Southerland Motion at 3-4. In response (Doc. 57; Pl. Southerland Resp.), Plaintiff clarifies she does not assert state tort claims against Defendant Southerland. <u>See</u> Pl. Southerland Resp. at 5.

U.S.C. [§] 1983, 'whether the indifference is manifested by prison doctors … or by prison guards.'").

Unlike Plaintiff's vague and conclusory allegations against Defendant Gartman, Plaintiff provides factual detail to show a causal connection between an alleged constitutional violation and Defendant Southerland's acts or omissions. For instance, Plaintiff alleges as follows: on May 1, 2017, she sent an email, which the former FWRC warden received and forwarded to Defendant Southerland, see Am. Compl. ¶¶ 76-78; on May 2, 2017, Plaintiff sent an email directly to Defendant Southerland and her assistant but received no response, id. ¶¶ 79-80; on August 8, 2017, Plaintiff sent an email to counsel for the FDOC stating the "warden [of FWRC] is [not] concerned for [Ms. Rolnick's] well-being," id. ¶ 81; on August 17 and 18, 2017, Plaintiff sent an email to Defendant Southerland, and her assistant acknowledged receipt of the email, id. ¶¶ 83-83; on August 22 and 23, 2017, Plaintiff sent emails to Defendant Southerland asking for the name of legal counsel, and Defendant Southerland responded saying "she would be calling shortly," id. ¶¶ 86-88; on August 23, 2017, Plaintiff sent an email to Defendant Southerland and others asking to speak with Ms. Rolnick about Rolnick's refusal to see the pulmonologist, and Defendant Southerland responded, id. ¶¶ 89-90; on August 24, 2017, Plaintiff sent an email to Defendant Southerland advising that Dr.

Gonzalez Pagan was not giving Ms. Rolnick the medication she needed, id. ¶ 91; on August 25, 2017, Plaintiff and Defendant Southerland "exchanged emails" about Ms. Rolnick's medical condition and proper treatment for it, id. ¶ 93; on August 28, 2017, Plaintiff sent an email to the Office of the Inspector General (IG) for the FDOC, an IG representative responded to Plaintiff and copied Defendant Southerland, and Plaintiff replied to them both advising "[Ms.] Rolnick's PAH can be fatal if not treated," id. ¶ 94; and on August 28, 2017, Plaintiff sent an email to Defendant Southerland and others seeking "appropriate medical care for [Ms. Rolnick's] life-threatening illness," id. ¶ 95.

Accepted as true, Plaintiff's allegations demonstrate Defendant Southerland knew of Ms. Rolnick's health condition, knew her condition could be fatal if not properly treated, and learned she was not receiving proper treatment yet took no action. These allegations are sufficient to state a deliberate indifference claim against Defendant Southerland, despite her not having been a healthcare provider. See Goebert, 510 F.3d at 1327-28. As such, counts two and seven are not subject to dismissal under Rule 12(b)(6).[4]

## V. Plaintiff's Discovery Motion

Plaintiff asks the Court to permit her to disclose her expert report late.

---

[4] Because Plaintiff alleges Defendant Southerland personally participated in a constitutional violation, the supervisory liability claim necessarily survives.

<u>See</u> Disc. Motion at 3-4. Plaintiff asserts her failure to timely disclose her expert report was due to a misunderstanding: When she moved for an extension of the deadlines (Doc. 58), she intended the expert disclosures deadlines to be extended as well, but she did not specify as much and therefore the Court's amended CMSO did not include new dates for disclosure of expert reports. <u>Id.</u> at 1-2.

The medical Defendants oppose the request, asserting Plaintiff fails to demonstrate the "violation of the Court's [CMSO] was substantially justified or harmless." <u>See</u> Disc. Motion Resp. at 1. Defendants contend they "relied upon Plaintiff's nondisclosure of experts in making decisions on whether to retain additional or alternative experts." <u>Id.</u> at 5.

Under the circumstances, the Court finds Plaintiff's motion is due to be granted. Plaintiff's misunderstanding was reasonable, she first attempted to obtain Defendants' informal agreement to allow her to disclose her expert report beyond the deadline, and there is little harm to Defendants given discovery is not set to close until July 29, 2021. If the medical Defendants want to obtain additional or alternative experts, or if they require more time for discovery in light of the Court's Order, they should confer with all counsel to agree upon appropriate deadlines and submit a joint motion, if necessary.

Accordingly, it is now

**ORDERED:**

1.      The FDOC's motion to dismiss (Doc. 50) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** to the extent the claims arising under § 1983 (counts six and ten) are **dismissed with prejudice**. In all other respects, the motion is **DENIED**. The FDOC must answer the second amended complaint (Doc. 47) within **twenty days** of the date of this Order.

2.      Defendant Gartman's motion to dismiss (Doc. 51) is **GRANTED** to the extent the claims against her are **dismissed without prejudice** subject to Plaintiff's right to amend her complaint solely as to the claims against Defendant Gartman.

3.      Defendant Southerland's motion to dismiss (Doc. 53) is **DENIED**. Defendant Southerland must answer the second amended complaint (Doc. 47) within **twenty days** of the date of this Order.

4.      If Plaintiff chooses to amend her complaint with respect to the claims against Defendant Gartman, she must do so by **June 15, 2021**, and Defendants must file answers within twenty days of the date Plaintiff files an amended complaint.

5.      Plaintiff's motion for out-of-time disclosure of Plaintiff's expert (Doc. 63) is **GRANTED**. Plaintiff must disclose her expert report by **May 26,**

**2021**.

      **DONE AND ORDERED** at Jacksonville, Florida, this 20th day of May

2021.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record